IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID RANKIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SALDUTTI, LLC, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 19-1508 |

## OPINION

**Slomsky, J.**                                                                 **January 17, 2020**

### I.    INTRODUCTION

Plaintiffs David and Dina Rankin ("Plaintiffs") bring this suit against Defendants Saldutti, LLC a/k/a Saldutti Law, LLC a/k/a Saldutti Law Group, William F. Saldutti, III, Robert L. Saldutti (collectively, "the Saldutti Defendants"),[1] and Defendant Customers Bank ("Customers Bank"). On April 9, 2019, they initiated this case by filing a Class Action Complaint against Defendants containing two Counts. Count I is a claim against the Saldutti Defendants pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.; Count II is a claim against Customers Bank pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.

On June 24, 2019, Customers Bank filed the present Motion to Dismiss. (Doc. No. 13.) On July 22, 2019, Plaintiffs filed a Response in Opposition to Customers Bank's Motion to Dismiss (Doc. No. 16), and on July 29, 2019, Customers Bank filed a Reply in Support of its Motion (Doc. No. 21). On August 28, 2019, the Court held a hearing on the Motion.

---

[1]    The Saldutti Defendants filed an Answer to the Complaint with Affirmative Defenses on June 17, 2019. (Doc. No. 12.)

1

The Motion to Dismiss is now ripe for disposition. For reasons discussed infra, Customers Bank's Motion to Dismiss will be granted.

## II. BACKGROUND[2]

Plaintiffs allege that they took out a personal loan with Customers Bank for $10,000 in 2006. (Doc. No. 1 ¶ 14.) The balance was paid down to approximately $2,700 before Plaintiffs defaulted on the loan. (Id. ¶ 15.) The Saldutti Defendants were engaged by Customers Bank to collect on the loan and, on November 15, 2011, obtained a judgment against Plaintiffs for approximately $4,900 for the consumer debt owed to Customers Bank. (Id. ¶¶ 16-17.) Plaintiffs entered into a repayment plan through the Saldutti Defendants' office, but again missed payments in 2017. (Id. ¶¶ 18-19.)

In or around May 2018, Plaintiff David Rankin contacted Defendant William Saldutti III "to inquire about rehabilitation and reconciliation of the payment plan." (Id. ¶ 20.) Following this inquiry, the Saldutti Defendants sent Plaintiffs an e-mail on June 22, 2018 requesting Plaintiffs' complete and unredacted tax returns and requiring the completion of an attached "comprehensive 'financial form.'" (Id. ¶¶ 21-22.) Plaintiffs assert that this financial form "was furnished by the Saldutti Defendants, and prepared and issued by Customers Bank on Customers Bank's letterhead containing [Customers] Bank's logo." (Id. ¶ 22.) The form, signed by Plaintiffs, provides that "[t]he information contained in this statement is provided to induce you to extend or to continue the extension of credit to the undersigned or to others upon the guarantee of the undersigned." (Doc. No. 3.[3])

---

[2] The facts are sourced from the allegations in the Complaint and are set forth in the light most favorable to Plaintiffs.

[3] The financial form (Doc. No. 3) was filed under seal because it contains Plaintiffs' financial information and other confidential consumer data. (See Doc. No. 2.)

2

As related to Customers Bank, Plaintiffs contend that the form "is actually a credit extension application form of [Customers] Bank," consequently triggering TILA disclosure requirements. (Doc. No. 1 ¶ 26-27.) Plaintiffs also assert that "the only 'credit' at issue herein, as reasonably understood by Plaintiffs, was in the lowering of the monthly payments of the original debt owed to the Bank." (Id. ¶ 26.) Customers Bank did not provide TILA-required disclosures before or after Plaintiffs received the financial form. (Id. ¶ 27.) Plaintiffs' sole claim against Customers Bank is predicated on Customers Bank's failure to provide TILA disclosures before or after Plaintiffs were given and completed the financial form.

## III. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Article III of the United States Constitution, the power of the judiciary extends only to "cases" and "controversies." Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 110 (3d Cir. 2019). An element of the case-or-controversy requirement is that a plaintiff must establish, based on their complaint, that they have standing to bring the case. Id. "To maintain a suit, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. To show an injury in fact, a plaintiff must allege "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id.

### B. Federal Rule of Civil Procedure 12(b)(6)

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain

3

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a

4

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

Customers Bank submits the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a cognizable claim. First, Customers Bank contends that Plaintiffs lack Article III standing because they have not identified any concrete, particularized injury resulting from the alleged non-disclosure, and instead assert a bare procedural violation insufficient to confer standing. Second, Customers Bank contends that Plaintiffs cannot state a viable claim under the TILA because they did not allege that (1) Customers extended or offered credit at the time of the alleged events; (2) Plaintiffs are consumers as defined by the TILA; (3) Customers Bank is a creditor as defined by the TILA; and (4) a credit transaction occurred as defined by the TILA. As a result, Customers Bank requests that the Court dismiss Plaintiffs' cause of action against them with prejudice. (Doc. Nos. 13, 21.)

Conversely, Plaintiffs contend that they have standing because they suffered financial and informational harm based on Customers Bank's violation of the TILA, which is a de facto injury. Moreover, Plaintiffs contend that they state a valid TILA claim because the financial form constituted an application for an extension of credit that triggered TILA disclosures, Customers Bank is a creditor under the TILA, and Plaintiffs are consumers under the TILA. (Doc. No. 16.)

For the reasons discussed infra, Plaintiffs have standing to bring this suit under Federal Rule of Civil Procedure 12(b)(1), but the Court will grant Customers Bank's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court will first address Customer Bank's arguments regarding Article III standing and will then address the arguments under Federal Rule of Civil Procedure 12(b)(6).

5

## A. Statutory and Regulatory Framework

The TILA was enacted in 1968 "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." Vallies v. Sky Bank, 432 F.3d 493, 495 (3d Cir. 2006), as amended on reh'g (Feb. 1, 2006) (quoting Rossman v. Fleet Bank (R.I.) Nat. Ass'n, 280 F.3d 384, 389 (3d Cir. 2002)). "The TILA promotes this goal largely by 'imposing mandatory disclosure requirements on those who extend credit to consumers in the American market.'" Strubel v. Comenity Bank, 842 F.3d 181, 186 (2d Cir. 2016) (quoting Mourning v. Family Publ'ns Serv., Inc., 411 U.S. 356, 363 (1973)).

The Consumer Financial Protection Bureau is statutorily empowered to prescribe regulations to carry out purposes of the TILA. See 15 U.S.C. § 1604(a). Those regulations are collectively known as Regulation Z, 12 C.F.R. Part 1026 et seq. Under the TILA and Regulation

Z, a "creditor"[4] that extends "credit"[5] to "consumers"[6] must make certain disclosures before the "consummation" of the credit transaction, including, inter alia, (1) the amount financed; (2) the

---

[4] The TILA defines "creditor" as the following:

> [A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g).

Regulation Z defines creditor as

> A person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

12 C.F.R. § 226.2(17)(i).

[5] The TILA defines "credit" as follows:

> The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

15 U.S.C. § 1602(f).

[6] "Consumer" under the TILA is defined as follows:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(i).

7

sum of the amount financed; and (3) the number, amount and due dates or period payments scheduled to repay the total payments. See Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 196 (3d Cir. 2019); 15 U.S.C. § 1638(a); 12 C.F.R. § 226.17(b).

### B. Standing

Customers Bank first submits that Plaintiffs lack Article III standing to bring their TILA claim, and therefore the Court lacks subject matter jurisdiction over that claim. Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert a defense for lack of subject matter jurisdiction by motion before pleading. Fed. R. Civ. P. 12(b)(1).

To maintain standing to bring a suit, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Kamal, 918 F.3d at 110. To show an injury in fact, a plaintiff must allege "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id.

#### 1. The Legal-Interest Requirement of Injury In Fact

Here, Plaintiffs satisfy the legal-interest requirement of injury in fact. The TILA obligates a creditor to make specified disclosures. See 15 U.S.C. § 1638(a). Congress has the authority to create new legal interests by statute, the invasion of which can support standing. Strubel, 842 F.3d at 188 (citing Warth v. Seldin, 422 U.S. 490, 500 (1975)). Here, Congress has statutorily conferred legal interests on consumers under the TILA. See id. However, Plaintiffs only have standing to sue if they can allege a concrete and particularized injury to that interest. See id.

#### 2. "Concrete and Particularized" Injury Requirements

To satisfy the particularity requirement, Plaintiff's Complaint must "clearly and specifically set[ ] forth facts showing a risk of harm particular to" them. Kamal, 918 F.3d at 116.

8

Here, the Complaint alleges that Customers Bank provided no TILA disclosures to Plaintiffs and Plaintiffs suffered monetary damages as a result. This is a showing of a particularized harm.

"To be 'concrete,' an injury 'must actually exist,' . . . that is, it must be 'real, and not abstract.'" Strubel v. Comenity Bank, 842 F.3d at 186 (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548, as revised (May 24, 2016)). Both tangible harms and certain intangible harms qualify as concrete injuries. Id. "In deciding whether an intangible harm—such as the failure to receive a required disclosure—manifests concrete injury, a court is properly respectful of Congress's judgment in affording a legal remedy for the harm." Id. However, at the same time, "a court properly recognizes that Congress's "role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 189.

The Supreme Court in Spokeo recognized that a plaintiff cannot "allege a bare [statutory] procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Spokeo, 136 S. Ct. at 1549. However, an alleged procedural violation manifests concrete injury if that violation actually harms or presents a material risk of harm to the underlying concrete interest. Kamal, 918 F.3d 102 at 113. "If the violation does not present a 'material risk of harm to that underlying interest,' however, a plaintiff fails to demonstrate concrete injury." Id. (quoting Strubel, 842 F.3d at 190).

Here, Plaintiffs do not simply allege a bare procedural violation. The Complaint clearly states that "[t]he Plaintiffs and the Class members have been injured and suffered monetary losses because of the Bank's violations of TILA." (Doc. No. 1 ¶ 72.) Plaintiffs' alleged monetary injury

9

is not merely procedural in nature, but is an allegation of a concrete, economic injury. As such, Plaintiffs have alleged a particularized and concrete injury and have standing to bring this suit.

**C. Failure To State A Claim**

Customers Bank submits that Plaintiffs fail to state a cognizable claim under the TILA because they have not alleged that a disclosure-triggering transaction took place, and their attempt to rehabilitate their existing loan is not a refinancing requiring new TILA disclosures. Customers Bank also argues that Plaintiffs have not sufficiently alleged that (1) Plaintiffs are consumers as defined by the TILA or (2) Customers Bank is a creditor as defined by the TILA. In response, Plaintiffs argue that they have stated a valid claim because the financial form they received and completed was Customer Bank's application for an extension of credit that triggered TILA disclosures. Plaintiff's claim against Customers Bank is based entirely on the financial form, which provides as follows in the section titled "Representations and Warranties:"

> The information contained in this statement is provided to induce you to extend or to continue the extension of credit to the undersigned or to others upon the guarantee of the undersigned. The undersigned acknowledge and understand that you are relying on the information provided herein in deciding to grant or continue credit or to accept a guarantee thereof. Each of the undersigned represents, warrants and certifies that the information provided herein is true, correct and complete. Each of the undersigned agrees to notify you immediately and in writing of any change in name, address, or employment and of any material adverse change (1) in any of the information contained in this statement or (2) in the financial condition of any of the undersigned or (3) in the ability of any of the undersigned to perform its (or their) obligations to you. In the absence of such notice or a new and full written statement, this should be considered as a continuing statement and substantially correct. If the undersigned fail to notify you as required above, or if any of the information herein should prove to be inaccurate or incomplete in any material respect, you may declare the indebtedness of the undersigned or the indebtedness guaranteed by the undersigned, as the case may be, immediately due and payable. You are authorized to make all inquiries you deem necessary to verify the accuracy of the information contained herein and to

10

> determine the creditworthiness of the undersigned. The undersigned authorize any person or consumer reporting agency to give you any information it may have on the undersigned. Each of the undersigned authorized you to answer questions about your credit experience with the undersigned. As long as any obligation or guarantee of the undersigned to you is outstanding, the undersigned shall supply annually an updated financial statement. This personal financial statement and any other financial or other information that the undersigned give you shall be your property.

(Doc. No. 3 at 3.) Plaintiffs completed and signed this form as the "undersigned," believing they would be considered for lower monthly payments on their original loan. (Doc. No. 1 ¶ 28.) The Complaint alleges that while Plaintiffs thought they were completing the form to lower their monthly payments on their original debt, the form was actually a credit extension application that requires TILA disclosures. (Doc. No. 1 ¶ 26.) For the reasons below, Plaintiffs fail to state a claim under the TILA.

First, the Complaint fails to specify the TILA disclosures, section, or subsection in Plaintiff's allegations against Customers Bank. Alleging a violation of the TILA in a complaint without specifying the specific TILA section or subsection is insufficient to state a plausible claim. See Yancey v. First Bank, No. 6:16-CV-00028, 2016 WL 4126661, at *4 (W.D. Va. Aug. 2, 2016) (dismissing TILA and Regulation Z claim when complaint failed to reference the specific section of the TILA being violated). In this case, Plaintiffs do not allege in their Complaint which TILA disclosures Customers Bank should have provided them or the section of the TILA Customers Bank allegedly violated. This failure is insufficient pleading as a matter of law.

Second, Plaintiffs' completion of the financial form in their effort to negotiate a payment plan on their existing debt did not constitute an extension of credit that required TILA disclosures. The definition of "consumer" under the TILA, "used with reference to a credit transaction, characterizes the transaction as one in which the party <u>whom credit is offered or extended</u> is a

11

natural person . . . ." 15 U.S.C. § 1602(i) (emphasis added). The TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f); Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 200 (3d Cir. 2019).

The Third Circuit in Wolfington found an extension of credit existed when the plaintiff alleged that the defendant permitted him to pay off a debt for a certain amount per month. Wolfington, 935 F.3d at 200. Here, the Complaint alleges no such permission by Customers Bank. Instead, the Complaint states that the financial form from Customers Bank was "a credit extension application form." (Doc. No. 1 at ¶ 26.) The form itself specifies that the information in the financial form is provided to "induce" Customers Bank to extend or to continue the extension of credit to the undersigned – in this case, the Plaintiffs. (Doc. No. 3 at 3.) Therefore, the completed financial form by itself, which provided information to induce Customers Bank to offer an extension of credit to Plaintiffs, was not an extension of credit. Thus, Plaintiffs have not sufficiently pled an extension of credit that would require TILA disclosures.

Third, even if the financial form constituted an extension of credit, that extension was not "consummated" under the TILA. "[A] creditor must make the Act's required disclosures before 'consummation' of the credit transaction; a credit transaction is 'consummated' only 'at the time that a consumer becomes contractually obligated on a credit transaction.'" Wolfington, 935 F.3d at 201 (quoting 12 C.F.R. § 226.2(a)(13)). In Wolfington, the Third Circuit concluded that the plaintiff sufficiently pled consummation of a credit transaction when there was a formation of a contractual agreement where a payment agreement was reached. Id. The Third Circuit also explained that while "no signed document is required to create a contractual obligation[,] . . . the exchange of promises to perform is sufficient to form a contract." Id. at 202. In this case, the

12

Complaint does not contain sufficient evidence of a binding contractual agreement to constitute "consummation" of the credit transaction. The Complaint only alleges that the financial form was an "application form." (Doc. No. 1 ¶ 26.) This form, meant to induce Customers Bank to extend or continue to extend credit to the undersigned, was not an exchange of promises between Plaintiffs and Customers Bank. Instead, the form states that the information is provided to help Customers Bank inform their decision whether "to grant to continue credit or to accept a guarantee thereof." (Doc. No. 3 at 3.) This is not an exchange of promises where Plaintiffs became contractually obligated on a credit transaction. Therefore, any extension of credit was not "consummated" under the TILA.

Fourth, Plaintiffs completed the financial form as part of negotiations for a payment plan on a judgment. Changes in payment schedules on an existing loan does not require new disclosures under the TILA; only a new credit transaction triggers TILA disclosure requirements, Ryder v. J.P. Morgan Chase Bank, 767 F. App'x 29, 31 (2d Cir. 2019). "Actions taken after a loan closing are not properly the subject of a TILA improper disclosure claim unless they constituted another transaction, such as a refinancing, that would require new disclosures under [Regulation Z]." Williams v. EMC Mortg. Corp. Inc., No. CIV.A. 12-1215, 2013 WL 1874952, at *3 (E.D. Pa. May 3, 2013).[7] A refinancing exists "when an existing obligation . . . is satisfied and replaced by a new

---

[7] In Williams, the defendants moved to dismiss a TILA claim on the grounds that it was time-barred by the statute of limitations because the mortgage transaction at issue closed in January 1998, and the plaintiff did not allege a TILA claim until 2012. Williams, 2013 WL 1874952 at *3. In response, the plaintiff argued that the TILA violations were deceptive lending and collection practices that the defendants engaged in after the initial loan closing, "namely when the plaintiff tried and failed to obtain information related to a new payment plan the parties tried to negotiate a settlement to the foreclosure litigation." Id. The court in Williams concluded that the plaintiff's argument "misses the point" because "the TILA functions to protect consumers requiring disclosures at the time of a closing of a loan transaction," not actions taken after a loan closing, unless they constituted another transaction that would require new disclosures. Id.

13

obligation undertaken by the same consumer." 12 C.F.R. §§ 1026.20(a). Notably, there are no disclosure requirements where there is "[a] change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency," or "[a]n agreement involving a court proceeding." 12 C.F.R. §§ 1026.20(a), a(3)-(4) (listing circumstances that do not constitute a refinancing).[8] Here, Plaintiffs' attempt to modify their original loan agreement did not constitute another transaction, such as a refinancing, that would trigger TILA disclosures. The existing loan obligation was not being replaced. Rather, Plaintiffs were endeavoring to lower

---

[8] The Official Staff Interpretation of this section to Regulation Z elaborates on what constitutes a refinancing. It states

> 1. Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. In any form, the new obligation must completely replace the prior one.
> · Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation.
>
> · A substitution of agreements that meets the refinancing definition will require new disclosures, even if the substitution does not substantially alter the prior credit terms.
>
> 2. Exceptions. A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing. Section 226.20(a)(1) through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one.

12 C.F.R. Pt. 1026, Supp. 1, Part 2.

14

monthly payments on their original loan. (Doc. No. 1 ¶ 26; Doc. No. 16 at 1.) This rehabilitation attempt was not a new transaction or extension of credit that required TILA disclosures. Thus, Customers Bank is not liable to Plaintiffs on the TILA claim as a matter of law.

## V. CONCLUSION

For the foregoing reasons, Customers Bank's Motion to Dismiss (Doc. No. 9) will be granted. Count II of the Complaint will be dismissed. An appropriate Order follows.